1

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____
UNITED STATES OF AMERICA)
          Government )    NO: 3:25CR14(SRU)
              )    February 11, 2025
 vs.           )    12:02 p.m.
HELEN ZERVAS      )
        Defendant.  )
_____)    915 Lafayette Boulevard
                  Bridgeport, Connecticut

CHANGE OF PLEA HEARING

B E F O R E:

    THE HONORABLE SARAH F. RUSSELL, U. S. D. J.

A P P E A R A N C E S:

For the Government : Jonathan N. Francis
                  David E. Novick
                  U.S. Attorney's Office
                  157 Church St., 25th Floor
                  New Haven, CT 06510

For the Defendant : Murdoch Walker, II
                  Lowther Walker LLC
                  101 Marietta Street, NW
                  Suite 3650
                  Atlanta, GA 30303

THE COURT:  Good morning.  We're here today for a hearing in the case of the United States of America versus Helen Zervas, Case Number 25CR14.

Counsel, can we please have your appearance starting with the Government?

MR. FRANCIS:  For the Government, Jonathan Francis.  With me is David Novick.

MR. WALKER:  Murdoch Walker.  With me is Dr. Helen Zervas.

THE COURT:  Terrific.  So we are here today because Dr. Zervas has indicated she may be prepared to enter a guilty plea to a two-count information charging her with defrauding a health care benefit program in violation of 18 U.S.C. 1347 and conspiracy to commit Hobbs Act extortion in violation of 18 U.S.C. 1951.

Dr. Zervas, I want to give you an overview of how this proceeding will go.

First, I will inquire with the Government whether its victim notification obligations have been met.  I will then go over the rights that you have concerning this case, then because there are a number of questions that I need to the ask you today that require truthful answers, the Courtroom Deputy will swear you in.

I will ask you about your level of education and state of mind to ensure you're understanding and

following what is happening.  We'll talk about the fact that you are proposing to give up your right to indictment to these charges and plead guilty to an information.

We'll talk then about the consequences of a guilty plea, rights you will be giving up if you choose to plead guilty and the maximum possible sentences you could receive if you decide to plead guilty today.  We'll discuss the sentencing guidelines and also the facts of the case.

We'll discuss the written plea agreement that you propose to enter with the Government.  I will be asking you questions throughout the hearing to determine whether your plea is knowing and voluntary.

Toward the end of the proceeding, if you decided that you want to plead guilty, the Clerk of Court will take your plea.  At the end of the proceeding, should you plead guilty, we'll take up the question of your release pending your sentencing date.

Generally, this will take around 45 minutes to an hour.  I want you to know that I'm in no hurry today.  Deciding whether to plead guilty is an important decision and you should take all the time that you need.

If at any point you do not understand something I'm saying, please ask me to clarify and I will clarify.

I note you are represented by Attorney Walker.  If at any point you want to speak privately with him, just please ask me.  Are you ready to proceed?

THE DEFENDANT:  Yes.

THE COURT:  Because this is the defendant's first appearance, I'm required to advise the parties at this time of the requirements under *Brady versus Maryland*.  I hereby direct the prosecution to comply with its obligations under *Brady versus Maryland* and its progeny to disclose to the defense all information whether admissible or not that's favorable to the defendant, material either to guilt or to punishment and known to the prosecution.  Possible consequences for non-compliance may include dismissal of individual charges or the entire case, exclusion of the evidence and professional discipline or court sanctions on the attorneys responsible.

I will be issuing a written order more fully describing this obligation.  A copy of which has been provided to each party this morning and possible consequences of failing to meet it.  I direct the prosecution to review and comply with that *Brady* order.  So, Attorney Francis, does the prosecution confirm that it understands its obligations?

MR. FRANCIS:  It does.

THE COURT:  And to Ms. Zervas, if you have any questions about the *Brady* rule, you should speak to your attorney.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  So I know the plea agreement contains a provision related to *Brady*.  We'll turn to that in the proceedings later today.  Because this is your first appearance, we did need to inform you of your rights under *Brady*.

We'll turn to the question of victim notification.  Attorney Francis, before we proceed any further, is there a victim entitled by statute to notice and the opportunity to be heard?

MR. FRANCIS:  There is not.

THE COURT:  Okay.  So, Dr. Zervas, I need to advise you of your rights. You have the right to remain silent.  That means you are not required to say anything to anyone that might incriminate you.  If you start making a statement, you can stop at any time.  If you choose to make a statement, you have the right to have your attorney with you.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  The reason those rights are so important is that if you choose to make a statement, anything you say can and very likely will be used to

prosecute you in this case or other matters.

Do you understand that these rights?

THE DEFENDANT: Yes.

THE COURT: You also have a right to be represented by an attorney at every stage of these proceedings. You have that right even if you cannot afford an attorney yourself. You are accompanied by Attorney Walker today whom I understand you have retained at your own expense. If at any time you are no longer represented by Attorney Walker, you need to let the court know. If you become financially eligible for appointment of counsel at court expense, the court will appoint a new attorney for you at no cost to you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I also need to advise you about your right to consular notification. Normally when this right is given, it is after a person has been arrested. Specifically, if you have citizenship rights in some country other than the United States, you have the right to request that the Government notify that country of the arrest. This situation is a bit different because you have not been arrested in the traditional sense. Nonetheless, I think it is prudent to advise you of this right. You do not need to say anything about your

citizenship on the record, but if you believe you have a right to have another country notified, you should discuss that matter with your attorney privately.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  So moving ahead, there's going to be a number of questions I must ask while you are under oath to assure me that any decision that you make today is knowing and voluntary and to assure me that there's a factual basis for any plea that you enter.  To our clerk, can you please place the defendant under oath?

(Whereupon, the witness was put under oath.)

THE DEFENDANT:  Yes.

THE CLERK:  Please state your name.

THE DEFENDANT:  Helen Joan Zervas.

THE COURT:  Dr. Zervas, now that you are under oath, your answers to my questions must be truthful or you will be subject to the penalties for perjury or for making a false statement.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you do not understand any of my questions, please just ask me and I will rephrase them.  If you need time to talk to your attorney, let me know and I will give you as much time as you need.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Before I start asking you questions, I want to emphasize that it is your choice between taking a case to trial and pleading guilty.  It is your choice, not your lawyers.  While it is proper for your lawyer to advise you about this important decision, the decision whether or not to plead guilty is yours and yours alone.  Similarly, what you say today in response to my questions is also your responsibility and yours alone.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  I will ask you a few questions, so I can ensure you're understanding what is happening today.  Again can you tell me how old you are?

THE DEFENDANT:  57.

THE COURT:  How far did you go in school?

THE DEFENDANT:  Doctorates.

THE COURT:  Are you now or have you recently been under the care of a physician, psychiatrist, social worker or counselor?

THE DEFENDANT:  No.

THE COURT:  In the past 48 hours, have you taken any narcotic drug, medicine or pills or consumed any alcoholic beverage that would affect your ability to understand this proceeding?

THE DEFENDANT:  No.

THE COURT:  Today as you sit here is your mind clear?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand why you are here?

THE DEFENDANT:  Yes.

THE COURT:  Have you had the opportunity to discuss your case with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  Have you had any difficulty communicating with him?

THE DEFENDANT:  No.

THE COURT:  Have you had enough time to speak to him about your case?

THE DEFENDANT:  Yes.

THE COURT:  Has he answered any questions that you have?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied to have Attorney Walker represent you today?

THE DEFENDANT:  Yes.

THE COURT:  Attorney Walker, have you had any difficulty communicating with your client?

MR. WALKER:  No, Your Honor.

THE COURT:  Are you confident that your client

understands the nature of the proceeding?

MR. WALKER:  Yes, Your Honor.

THE COURT:  Have you discussed the case with her fully?

MR. WALKER:  Yes, Your Honor.

THE COURT:  Do have any doubts at all about Dr. Zervas's competence to plead guilty at this time should she choose to do so?

MR. WALKER:  No, Your Honor.

THE COURT:  So Dr. Zervas has indicated her willingness to waive indictment and plead guilty to a two-count information charging her with defrauding a health care benefit program in violation of 18 U.S.C. 1347 and conspiracy to commit Hobbs Act extortion in violation of 18 U.S.C. 1951.  These are felony charges.

Under federal law, a felony charge can only proceed to a guilty verdict or plea if an indictment or an information has been filed.

Let me describe the differences to you. An indictment is issued by the grand jury.  The grand jury is made up of 16 to 23 members of the community who are summoned for grand jury service.  The Government presents the evidence to the grand jury.  If at least 12 members of the grand jury find that there's probable cause to believe that a crime has been committed and that you

committed it, the grand jury returns an indictment.  If 12 members do not find probable cause to believe you committed the offense, no indictment is returned and the charge does not proceed.  You have the right to require the Government to present its facts to a grand jury and have at least 12 of the grand jurors to find probable cause to believe that you committed the charged offense.

You also have the right to have a federal grand jury comprised of a fair cross section of the area from which the indictment is returned and the right to challenge any alleged under-representation in the jury pool.

Your attorney has indicated that you have elected to proceed by way of Information instead.  An Information has the same effect as an Indictment in the sense that it can initiate a charge, but it is used where the parties agree that the Government would be able to establish probable cause to file the charges if the matter were presented to a grand jury.

If you proceed by Information, you are giving up your right to have the charges presented to the grand jury.

Attorney Walker, have you advised your client of the meaning of a waiver of indictment?

MR. WALKER:  Yes, Your Honor.

THE COURT: Does she, in your opinion, understand your explanation of the rights she will be waiving?

MR. WALKER: Yes, Your Honor.

THE COURT: Dr. Zervas, do you understand your right to proceed by Indictment which would require a presentation of the case to the grand jury?

THE DEFENDANT: Yes.

THE COURT: Has anyone threatened you or induced you to give up which your right to Indictment?

THE DEFENDANT: No.

THE COURT: Has anyone -- is anyone forcing you to do so?

THE DEFENDANT: No.

THE COURT: If you gave up this right, would you be doing so voluntarily?

THE DEFENDANT: Yes.

THE COURT: Do you wish to waive or give up your right to proceed by Indictment?

THE DEFENDANT: Yes.

THE COURT: Do you agree to proceed by way of Information instead?

THE DEFENDANT: Yes.

THE COURT: Do you have with you a form entitled a Waiver of Indictment?

13

THE DEFENDANT:  Yes.

THE COURT:  And has that been signed already?

MR. WALKER:  No, Your Honor.

THE COURT:  If you are prepared to waive your right to the filing of an Indictment, you may sign that form now, then you may give it to your attorney. Attorney Walker, after showing to the Government, you can hand it up to the courtroom deputy.

MR. WALKER:  (Handing.)

THE COURT:  On the basis of Dr. Zervas's answers to my questions and the representations of Attorney Walker, I find that Dr. Zervas has knowingly and voluntarily waived her right to Indictment.  The record shall reflect that the defendant has signed the Waiver of Indictment in the Court's presence.  At this time, I will accept the signed information for filing.

MR. FRANCIS:  (Handing.)

THE COURT:  So I have received from Attorney Francis a copy of the Information and we will accept that for filing.

So we're going to turn now to discuss the nature of the charges, the elements of the offenses and the maximum penalties that apply should you decide to plead guilty.

Dr. Zervas, have you reviewed the Information

that was filed against you?

THE DEFENDANT:  Yes.

THE COURT:  As I've mentioned, the Information consists of two counts.  One count accuses you of defrauding a health care benefit program in violation of Title 18 U.S.C. Section 1347 and Count Two accuses you of conspiracy to commit Hobbs Act extortion in violation of Title 18, U.S.C. Section 1951.

Dr. Zervas, do you understand the nature of the charges against you in Counts One and Two of the Information?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed the charges with your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  Has he answered all the questions you have had about it?

THE DEFENDANT:  Yes.

THE COURT:  Dr. Zervas, I need to advise you that the potential penalties for these charges include the following: With respect to imprisonment, the offense in Count One carries a maximum penalty of ten years of imprisonment and the offense in Count Two carries a maximum penalty of twenty years imprisonment.

With respect to supervised release, the Court

may impose a term of supervised release of not more than three years to begin after any term of imprisonment and this is under 18 United States Code Section 3583.  Should the defendant violate any condition of supervised release, she may be required to serve a further term of imprisonment of up to two years per violation with no credit for time already spent on supervised release.

With respect to a fine, under 18 U.S.C. 3571, the maximum fine that may be imposed on the defendant is the greatest of the following amount.  Twice the gross gain to the defendant resulting from the offense or twice the gross loss resulting from the offense whichever is greater or $250,000.

And with respect to a special assessment, the defendant is obligated to pay a special assessment of $100 on each count of conviction for a total of $200.

And with respect to restitution, the Court must also order you to make restitution to the victims of this offense upon a guilty plea and at sentencing.  There's a rider to your plea agreement concerning restitution. That's on pages 10 and 11 of the agreement.  As this is an offense that resulted in damage or loss of property to a victim of the offense, in this case the United States Government, you would be required to return the property to the Government or its designee or pay an amount equal

to the greater of the value of the property on the date of the damage, loss or destruction of the value of the property on the date of sentencing less the value of the property, less the value as of the date the property is returned.

THE COURT: Attorney Francis, have I correctly stated the applicable penalties?

MR. FRANCIS: Yes, Your Honor.

THE COURT: And, Attorney Walker, do you agree?

MR. WALKER: I agree, Your Honor.

THE COURT: Dr. Zervas, do you understand that what I've just described are the possible penalties to which you could be exposed should you chose to plead guilty to Counts One and Two of the Information?

THE DEFENDANT: Yes, I do.

THE COURT: Now, I will speak to you about the consequences of a guilty plea. The first and most important thing that you must understand is that you do not have to plead guilty even if you are guilty.

Under our law, the Government has the burden of proving the guilt of a defendant beyond a reasonable doubt. If the Government is unable to meet that burden of proof, the jury has a duty to find the defendant not guilty. Do you understand?

THE DEFENDANT: Yes.

THE COURT:  It sometimes happens in an American courtroom that a jury has returned a verdict of not guilty even though most people watching the trial or even the people involved in the trial believe that the defendant committed the crime.  In such cases what the jury is saying is not necessarily that the defendant is innocent but rather the prosecutor failed to meet the burden of proving the defendant guilty beyond a reasonable doubt.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  So that is why I say even if you are guilty, you have a choice.  You may require the Government to prove each element of the case beyond a reasonable doubt.  You have an absolute right to plead not guilty and to persist in that plea.  To make the Government prove its case and go to trial, you can say not guilty when the Clerk of the Court asks you how you plead.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead not guilty, under the Constitution and laws of the United States, you have a number of important rights.  You have the right to a speedy public jury trial.  You have the right to participate in the jury selection process through counsel and object to potential jurors.  You have the right to be

represented by an attorney and, if necessary, have the Court appoint counsel at trial and at every stage of these proceedings. You are currently represented by Attorney Walker whom I understand you have retained.  But if at some point in the future, you cannot afford counsel, the Court will appoint a lawyer for you at no cost.  Do you understand these rights?

THE DEFENDANT:  Yes.

THE COURT:  In the course of a trial, the witnesses for the Government would have to come to court and testify in your presence.  That's called your Right of Confrontation.  Your counsel would have the right to cross-examine the witnesses for the Government and to object to any evidence offered by the Government.  You would have the right to offer evidence on your own behalf and compel the attendance of witnesses with relevant information using the subpoena power of the court.

Do you understand these rights?

THE DEFENDANT:  Yes.

THE COURT:  At trial, you would have the right to testify if you choose to do so.  You could not be required to testify.  Under the Constitution of the United States, a defendant in a criminal case cannot be forced to take the witness stand at his trial and say anything that could be used to show that she's guilty of

a crime for which she is charged.  If you decided not to testify at your trial, I would instruct the jury they could not hold that against you.

Do you understand that right?

THE DEFENDANT:  Yes.

THE COURT:  At the trial you would be presumed innocent.  The Government would have to overcome that presumption and prove you guilty by competent evidence and beyond a reasonable doubt.  You would not have to prove that you are innocent.  If the Government were to fail to meet that burden of proving each element of the offense beyond a reasonable doubt, the jury would have the duty to find you not guilty.

Finally, at trial, the jury's decision would have to be unanimous.  Do you understand this right?

THE DEFENDANT:  Yes.

THE COURT:  If you decide to plead guilty today, I will need to ask you questions about what you did that makes you guilty.  I need to satisfy myself that you are, in fact, guilty of the charge to which you seek to plead guilty, so you will need to answer my questions and acknowledge your guilt.  That means that you will be waiving, in part, your right to remain silent and not say anything that might incriminate you in order to tell me what you did.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty and I accept your plea, there will be no trial.  You will be giving up the trial rights that I have described.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You will have no right to appeal the conviction.  Although, you may still be able to appeal the sentence that is essentially imposed by the Court.  We will discuss that later.

By pleading guilty, you give up the right to a jury trial on these charges.  The Court will simply enter a finding of guilty on the basis of your guilty plea.

Do you understand that the Court would enter a finding of guilty without trial if you choose to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  If you are found guilty, you may lose some other important rights such as the right to vote, the right to hold public office and the right to serve on a jury.  Because you are proposing to plead guilty to a felony, you will lose the right to possess any kind of firearms or ammunition.  You might also lose certain federal benefits.  A DNA sample will be collected from you for analysis and indexing.

The Government also reserves the right to notify any state or federal agency by whom you are licensed or with whom you do business as well as any current or future employer of the fact of this conviction.  We call these collateral consequences of a conviction.

Do you understand these consequences?

THE DEFENDANT:  Yes.

THE COURT:  Your guilty plea today may work to your disadvantage if in the future, you are found guilty of another crime because there's a possibility you could receive a more severe penalty at that time as a result of your guilty plea and conviction.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Finally, I'm required to advise all defendants that there may be immigration consequences of this conviction if you are not a citizen of the United States.  If you are not a citizen of the United States, your conviction in this matter could result in your being ordered removed from the United States being denied citizenship and being denied admission to the United States in the future.

Additionally, if you are naturalized United States citizen, a conviction in this matter could result in denaturalization and removal.  This is not an immigration court and I will not make the decision as to

whether you would actually be removed, but most felony convictions result in removal and if you are not a citizen, you should assume that once your criminal case is closed, you could be removed from the United States and barred from returning.  Likewise, if you are a naturalized citizen, you bear the risk of denaturalization and removal after this conviction.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand all the potential consequences of your guilty plea in this case that we have discussed?

THE DEFENDANT:  Yes.

THE COURT:  So we'll turn now to the plea agreement.  Attorney Francis, I understand there's a written plea agreement.  Do Dr. Zervas and her counsel have a copy?

MR. FRANCIS:  Yes, Your Honor.

THE COURT:  So, Dr. Zervas, have you read this plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  Have you had an opportunity to discuss it with your counsel?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand it?

THE DEFENDANT:  Yes.

THE COURT:  Attorney Walker, have you discussed the terms of the plea agreement with the defendant?

MR. WALKER:  Yes, Your Honor.

THE COURT:  Has she told you that she understands the terms of the plea agreement?

MR. WALKER:  Yes, Your Honor.

THE COURT:  Are you satisfied she fully understands the terms of the agreement?

MR. WALKER:  Yes, Your Honor.

THE COURT:  Thank you.  Dr. Zervas, I'm going to ask the prosecutor to summarize the terms of the plea agreement.  I want you to listen carefully because when he's done, I'm going to ask you if the agreement as he has summarized it reflects the agreement that you think you are making with the Government.

So, Attorney Francis, please outline the terms of the agreement and you may omit anything that I have already covered and we'll discuss later the elements of the offense.

MR. FRANCIS:  Thank you, Your Honor.  The plea agreement between the parties takes a form of an eleven-page letter from the United States Attorney's Office to the defendant's counsel.  It confirms that the defendant wishes to plead guilty to a two-count

information.

Count One charges health care fraud in violation of Title 18, United States Code Section 1347 and Count Two charges conspiracy to commit extortion in violation of Title 18, United States Code Section 1951.  The bottom of page 1 begins to lay out the elements of those offenses.  We'll skip over those for now.  Page 2 sets forth the penalties which Your Honor has already gone through.  Page 3 begins the consideration of the guidelines which is only one factor under Title 18, United States Code Section 3553(a) the Court will consider at sentencing.  It goes onto set forth the parties' agreement with respect to acceptance of responsibility under the guidelines.  Page 4 begins the parties somewhat lengthy guideline stipulation.  I will skip over the arithmetic and get to the bottom line which is the parties agree that the Defendant under the guidelines is a Level 27 and assuming a Criminal History Category Level I, that would equal an advisory guideline range of 70 to 87 months of imprisonment, $25,000 to $250,000 fine, one to three years of supervised release.

The parties, despite the guideline calculation, reserve the right to seek a nonguideline sentence and to object and argue over what sentence is appropriate under 3553(a).

Further on page 5, it makes clear the defendant understands the Court is not bound by the parties' guideline stipulation and may impose a different sentence than the one the parties have calculated.

Page 5 contains the parties' agreement with respect to the Government's provision of information to the court with respect to sentencing.

Page 6 begins the stipulation of certain rights that the defendant is waiving.  Many of which Your Honor addressed including the right to Indictment, right to trial and the consequences of a guilty plea.

The bottom of page 6 contains the parties' agreed upon discovery waiver which stipulates that the defendant is pleading guilty because she is in fact guilty, and she understands because this is a preindictment plea, she's not yet received all or in fact, almost any of the discovery that otherwise she would be entitled to.

Page 7 has the waiver of the defendant's statute of limitation rights, her right to challenge her conviction with the exception of a challenge for ineffective assistance of counsel.

The bottom of page 7 has the defendant's waiver of the right to appeal or collaterally attack her sentence so long as it is less than 240 months of

imprisonment, three years of supervised release, $200 special assessment, a fine of any amount authorized by law and an order of restitution authorized by law. The exception to this waiver is for in effective assistance of counsel once again.

Page 8 contains the defendant's acknowledgement of her guilt and voluntariness of the plea. Once again makes clear that the defendant is pleading guilty freely and voluntarily because she is, in fact, guilty of the crimes charged in the Information.

Page 8 also has the scope of a parties' agreement. Basically this is limited to the parties who have signed this. Also, has a consideration of the collateral consequences which Your Honor has already set forth.

Page 9 makes clear this certifies -- this plea would certify the defendant's federal criminal liability for the acts charged in the information. It also has a paragraph dealing with dire consequences the defendant would face if she were to breach this plea agreement. It also makes clear there are no other promises not in writing.

The bottom of page 9 has the parties' signature block and as your Honor has set forth, page 10 and 11 is a rider concerning restitution.

THE COURT:  Thank you.  Attorney Walker, has Attorney Francis accurately summarized the plea agreement?

MR. WALKER:  Yes, Your Honor.

THE COURT:  Dr. Zervas, did the prosecutor say anything that came as a surprise to you?

THE DEFENDANT:  No.

THE COURT:  Does the written agreement that's been outlined by Attorney Francis fully and accurately reflect your understanding of the entire plea agreement that you have entered into with the Government?

THE DEFENDANT:  Yes.

THE COURT:  Other than the promises that have been set forth in writing, has anyone made any other promises to you that are not set forth in writing that have caused you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone made any threats against you to cause you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Is anyone forcing or coercing you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  I want to cover some other important topics that are mentioned in your plea agreement and

elaborate on them at this time.

First, with respect to how sentencing works in federal court. I've explained to you that the law governing your offense has certain statutory maximum penalties. I can sentence up to the statutory maximum. One of the things that guides me in deciding what an appropriate sentence might be within the bounds of any statutory maximum is a book called the United States Sentencing Guidelines Manual put out by the Sentencing Commission.

Before your sentencing, you will go through what we call a presentence investigation. It will begin with an interview of you by a United States Probation Officer. After the interview, the probation officer will talk to some of your friends or family members, research your background and collect information from the Government about the offense conduct. The probation office will then publish a report called the Presentence Report or PSR. Within the PSR, the probation office will include a calculation of the guideline range under the manual. The guidelines usually consist of a range in months of imprisonment or years of probation, a range of years of supervised release and a range for a monetary fine. The PSR will consider whether any downward or upward departure from the suggested sentencing range are

warranted.  It is important for you to understand that I must consider the United States Sentencing Guidelines and their policy statements in determining your sentence, but I'm not bound by those guidelines.  They are advisory only.  At your sentencing, if there's factual disputes about matters relevant to your sentence including objections to particular application of the guidelines, I will either resolve those issues under a standard called the preponderance of the evidence which is the lower standard than beyond a reasonable doubt, or choose not to resolve them if they don't make a difference to the outcome.

After I've considered the factual matters concerning your sentence, I will calculate the applicable sentencing guideline range for you under the sentencing guidelines including any possible departures under the guidelines.  You and the Government have agreed on a sentencing calculation under the guidelines.  But in analyzing the sentencing guidelines, I will consider -- I'm not bound by that agreement.  I will consider it. But I will have to calculate the guideline range myself.

Once I calculate the guideline range myself, it is only advisory.  I'm not obligated to give you a sentence within the guideline range that I calculate.  I could give you a sentence within the guideline range or

outside it.  You will not be able to withdraw your guilty plea if I calculate the guidelines differently than what you want or if I impose a sentence outside of the guideline range.

Attorney Walker, have you discussed with your client the operation of the sentencing guidelines and the sentencing process in this court?

MR. WALKER:  Yes, Your Honor.

THE COURT:  Have you discussed with her that the parties' calculation of the guideline range is not binding on the Court?

MR. WALKER:  Yes, Your Honor.

THE COURT:  Have you discussed with her that the guidelines are advisory only and that I could impose a sentence within the guideline range or outside of it?

MR. WALKER:  Yes, Your Honor.

THE COURT:  Dr. Zervas, have you discussed the sentencing guidelines with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand the guidelines are advisory only and not binding?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you will not be able to withdraw your guilty plea if I impose a sentence outside of the guideline range?

THE DEFENDANT:  Yes.

THE COURT:  Now, there's certain factors under the law I must consider in deciding an appropriate sentence for you and I want you to know what they are. They include your own history and characteristics, the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense and to afford adequate deterrence to criminal conduct as well to protect the public from any further crimes by you and to provide you with needed educational or vocational training or medical care or other correctional treatment in the most effective manner.  I will also consider the need to avoid unwarranted sentence disparities between your case and the cases of others with similar records and the need to provide restitution to the victims of the offense.  It is important that you understand that regardless of the sentence I impose, you will still be bound by your guilty plea.  You will have no right to withdraw the guilty plea and the Government will have no right to withdraw its agreements either.  At the end of the day, I could impose a sentence that's higher or lower than anyone expected. Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  Has anyone made any promises to you as to what your sentence will be?

THE DEFENDANT:  No.

THE COURT:  Do you understand that you will not be able to withdraw your guilty plea if the sentence I impose is different from what you argue or the Government argues for?

THE DEFENDANT:  Yes.

THE COURT:  Attorney Walker, have you informed your client that she will not be able to withdraw her guilty plea if I impose a sentence different than what she asked for or what the Government asks for?

MR. WALKER:  Yes, Your Honor.

THE COURT:  I will now turn to the portion of your plea agreement that talks about your right to appeal.  So generally you have no right to appeal your conviction after a guilty plea unless your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceedings that was not waived by your guilty plea.

Someone who pleads guilty does have the right to appeal the sentence imposed by the court under certain circumstances.  Any Notice of Appeal must be filed within 14 days of judgment being entered in your case.  If you are unable to pay the cost of an appeal, you can file a

motion to proceed with an appeal informa pauperis.  In your plea agreement, you have agreed you will not appeal or attack your conviction in this case and further, you have agreed that you will not appeal or attack the sentence I impose if the sentence does not exceed the following parameters: 240 months imprisonment, a three-year term of supervised release, a $200 special assessment and a fine of any amount and restitution in any amount even if I reach such a sentence based on analysis different from what is in your plea agreement. You have also agreed you will not challenge any condition of supervised release that I might impose for which you had notice and an opportunity to object.  Also you have agreed that any appeal would be limited to the portion of the sentencing calculation that goes beyond these limits or that relates to an issue that is not addressed by these limits.  An example of this would be if I impose a sentence of imprisonment of 250 months or but the rest of the sentence fell within the limits in your plea agreement.  You can only appeal the imprisonment issue and not the rest of your sentence.  Do you believe you fully understand your agreement with the Government concerning any appeal in this case?

THE DEFENDANT:  Yes.

THE COURT: Is anyone forcing you to limit your

right to appeal?

THE DEFENDANT:  No.

THE COURT:  Other than what's set forth in the plea agreement, has anyone promised you anything to get you to limit your right to appeal?

THE DEFENDANT:  No.

THE COURT:  Attorney Walker, have you discussed the appeal waiver provision with your client?

MR. WALKER:  Yes.

THE COURT:  Do you believe she fully understands it?

MR. WALKER:  Yes, Your Honor.

THE COURT:  So I will turn now to the *Brady* waiver in the plea agreement which appears on page 6. There's a provision there titled Discovery.

Dr. Zervas, in that provision you are agreeing to waive the right to appeal based on any failure by the Government to turn over evidence that is material and favorable to you.  I want to make sure that you are knowingly and voluntarily entering into this waiver, so earlier in this proceeding, I gave you information about rights you have under the Supreme Court case called *Brady v. Maryland.*

Under *Brady,* the Government has a duty to disclose information that is favorable to the defendant

and material to either guilt or punishment.  This includes not only information that tends to show a defendant is not guilty but other information favorable to a defendant such as information that could be used to impeach the credibility of prosecution witnesses and any other information that if it were withheld would deprive the defendant of a fair trial.  It also encompasses information that could be favorable to you at sentencing in this case.  The Government must disclose this information even if no request is made by the Defendant.

If the defendant fails to produce material information subject to *Brady* and the defendant is convicted at trial, the Court may vacate the judgment of conviction and order a new trial in which the defendant is able to make use of that information.  Do you understand these *Brady* rights?

THE DEFENDANT:  Yes.

THE COURT:  Now, have you had the opportunity to read the waiver language on pages 6 and 7 of your plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  Have you had the opportunity to discuss it your attorney?

THE DEFENDANT:  Yes.

THE COURT:  Has your attorney answered any

questions you have about this provision?

THE DEFENDANT:  Yes.

THE COURT:  Would you like more time to discuss it with your attorney?

THE DEFENDANT:  No.

THE COURT:  Do you feel you understand the meaning of this provision and its potential impact?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that after today, if you were to discover that the Government had some other information that might have been material to guilt or sentencing that was not given to you, you will not be able to come back and withdraw your plea or attack your conviction on that basis?

THE DEFENDANT:  Yes.

THE COURT:  Attorney Francis, can you put on the record in general terms what discovery material was provided to the defendant?

MR. FRANCIS:  Almost nothing, Your Honor.  In fact, now that I think about it, we may have shown her things, but I can't think of a single document that was provided to the defendant.

THE COURT:  Thank you.  Attorney Walker, have you had the opportunity to discuss this waiver provision with Dr. Zervas?

37

MR. WALKER:  Yes, Your Honor.

THE COURT:  Attorney Francis, is the Government aware of any *Brady* or *Giglio* material at this time that's not been provided to the defendant?

MR. FRANCIS:  No, Your Honor.

As the plea agreement reads, the attorneys for the Government are not aware of any information that in their view would establish the defendant's factual innocence of the crimes to which the defendant is pleading guilty.  That's a form sentence, but it is also true.  We're not aware of anything.  However, there is a copious amount of information in the Government's possession that's been collected or created in the course of our investigation.  I can't claim that I have reviewed personally every single page.  I think I would be aware if there were something in there, but I don't know what I don't know.

THE COURT:  Thank you, Attorney Francis.  So Attorney Walker, do you understand that the Government has information that it has not provided to you?

MR. WALKER:  Yes, Your Honor.

THE COURT:  And, Dr. Zervas, do you understand there's information out there that the Government has not provided to you?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that the Government has information that they have not -- potentially have not even reviewed yet?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand you are waiving any right you might have to review that information?

THE DEFENDANT:  Yes.

THE COURT:  So, Dr. Zervas, is anyone forcing you to enter into this particular provision of your plea agreement that's waiving your rights under *Brady*?

THE DEFENDANT:  No.

THE COURT:  Has anyone threatened or coerced you into agreeing to this provision?

THE DEFENDANT:  No.

THE COURT:  Are you knowingly and voluntarily giving up your right to obtain information from the Government that's favorable to you and material to your guilt or punishment?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand this waiver means the Government does not have to provide you any further information it has not already provided unless your attorney specifically requests it?

THE DEFENDANT:  Yes.

THE COURT: Attorney Walker, I just want to draw your attention to the portion of this provision that requires you to make a specific request of the Government regarding information that may be relevant to sentencing.

MR. WALKER: Yes, Your Honor. I'm aware.

THE COURT: Dr. Zervas, be sure you're aware your attorney needs to make a specific request relating to information relevant to sentencing pursuant to this provision.

THE DEFENDANT: Okay.

THE COURT: So we are now going to turn to the facts and evidence that would support a guilty plea to the counts of the information. Dr. Zervas, first you should know that every federal crime is made up of what we call elements which are things that the Government would have to prove to establish that you are guilty of that crime. The elements of these offenses are set forth on pages 1 and 2 of your plea agreement. If you can please turn to those pages.

So the elements of Count One are that there was a scheme or artifice to defraud or to obtain money or property by means of materially false or fraudulent pretenses, representations or promises in connection with the delivery of or payment for health care benefits, items or services.

40

The second element is that the defendant knowingly and willfully executed or attempted to execute that scheme or artifice with the intent to defraud. Finally, that the target of the scheme or artifice was a health care benefit program as defined in 18 United States Code Section 24(b).

So those are the elements of Count One.  With respect to Count Two, the elements are as follows:  That two or more persons entered into an unlawful agreement to commit Hobbs Act extortion under color of official right and the object of the agreement would have, if completed, affected interstate commerce in any way or degree and that the defendant knowingly joined the conspiracy with the specific intent to commit the offense that was the object of the conspiracy.

So now I will ask Attorney Francis to summarize the Government's evidence as to Count One and Two to which you, Dr. Zervas, propose to plead guilty today. Please listen carefully because when the prosecutor is finished, I will ask you whether you agree with the prosecutor's summary of the evidence.  Attorney Francis, please make a proffer of the Government's evidence in this case.

MR. FRANCIS:  If this case went to trial, the Government would introduce evidence establishing both

charged offenses beyond a reasonable doubt.

First, with respect to Count One, the Government would show from approximately 2015 through 2020 in the District of Connecticut, the defendant knowingly, willfully and with the specific intent to defraud, executed a scheme to defraud Medicaid and Medicare by means of false representations in connection with the payment for health care services.

By way of example, between September 2016 and January 2020, the Defendant submitted a materially false claim to Medicaid on more than 300 occasions and Medicare on more than 30 occasions.  Each of which misrepresented the defendant had provided or determined it was medically necessary to provide insertion of an amniotic membrane to the eye surface of a patient when the defendant knew the treatment was either not provided or was not medically necessary.  In total, the defendant submitted more than $599,000 in false claims to Medicaid and more than $66,000 in false claims to Medicare.

Second, with respect to Count Two, the Government would show from approximately January through June 2020 in the District of Connecticut, the defendant knowingly participated in a conspiracy to interfere with interstate commerce by bribing a state official to help the defendant in connection with a state audit of the

defendant's Medicaid billing.

We would show that the defendant knew that she and her business were the subject of a Medicaid audit by the State Department of Social Services that she had over billed Medicaid and that the State's audit could result in professional and criminal consequences for the defendant.

To avoid those consequences, she and a coconspirator paid a highly placed state official approximately $95,000 in bribes to take official action and pressure other officials to terminate or otherwise interfere with the State's audit.

As a result, that audit was not completed and the defendant was able to avoid the professional and criminal consequences typical for her fraud.

The evidence would show that the audit concerned where the bribe payment came from and the bribery benefited the defendant's business which handled goods that traveled in interstate commerce and thus, the bribery affected interstate commerce in any way or degree.

In order to prove all of these facts, the Government would present at trial, among other things, the defendant's own contemporaneous admissions, emails and business records to show her fraud as well

text messages between the defendant and her coconspirators detailing their corrupt agreement.  State officials would testify about the Medicaid system, the State's audit of the defendant's business, the influence exerted on them concerning that audit and the audit's premature cancellation.  We would also present bank records verifying bribe payments by the defendant and a coconspirator to the corrupt state official.

THE COURT:  So, Dr. Zervas, do you have any significant disagreement as to any fact that the prosecutor recited?

THE DEFENDANT:  No.

THE COURT:  I will ask a few follow-up questions, Attorney Francis, with respect to the conspiracy to commit the Hobbs Act extortion so the second count in the information just to confirm we have a factual basis for the plea.

Can you just outline the payments that were made that you said totaled $95,000?  Were those payments made from the defendant herself or from her business or can you just let them know where those payments were originating from.

MR. FRANCIS:  Sure.  The defendant drew on a business account so an account of her optometry business and made three payments totaling $95,000 to one of her

co-conspirators who then paid the other co-conspirator, who was the highly-placed state official, those bribes.

THE COURT:  Just to understand, the money went -- when they money went from -- so the money went from Dr. Zervas's business account to a co-conspirator's personal account?

MR. FRANCIS:  I'm not sure.  I can picture the check.  I'm not sure how that account was treated but yes, to a co-conspirator.  That co-conspirator wrote a separate check to the state official who was also in the conspiracy.

THE COURT:  So then the second -- the person in the middle, the first co-conspirator, let's call that person, wrote a check drawing from that person's funds addressed to the state official?

MR. FRANCIS:  Yes.

THE COURT:  Okay.  The funds were addressed to the state official personally?

MR. FRANCIS:  Yes, all three, yes.

THE COURT:  Dr. Zervas, do you agree with those facts as the prosecutor outlined them?

THE DEFENDANT:  Yes.

THE COURT:  So I'm going to turn now to a few questions for Dr. Zervas to establish a factual basis for the plea.

With respect to Count One of the Information, do you agree that a scheme existed to obtain money or property by submitting false claims for health care services?

THE DEFENDANT:  Yes.

THE COURT:  Do you agree that you executed that scheme by submitting claims for procedures with the knowledge that the procedures either would not be completed or were not medical necessary?

THE DEFENDANT:  Yes.

THE COURT:  Do you agree the target of that scheme or rather the targets of that scheme were the Medicare and Medicaid programs?

THE DEFENDANT:  Yes.

THE COURT:  With respect to Count Two of the Information, do you agree that after the State of Connecticut began to audit your business's billing practices that you agreed with a coconspirator and a senior state official for the state official to obtain money from either your business or the co-conspirator?

THE DEFENDANT:  Yes.

THE COURT:  At the time, did you know that the state official was a public official employed by the State of Connecticut?

THE DEFENDANT:  Yes.

46

THE COURT:  Were you aware that the money obtained by the public official was not due to him or his office?  In other words, did you know the state official was not entitled to that money?

THE DEFENDANT:  Yes.

THE COURT:  Did the state official obtain the money with either your agreement or the agreement of the other individual involved in this conspiracy?

THE DEFENDANT:  Yes.

THE COURT:  And do you agree that the agreement that you entered into was for the state official to obtain this money in exchange for that state official taking official action and for advising and pressuring other state officials to take official action with respect to the State's pending audit of your business?

THE DEFENDANT:  Yes.

THE COURT:  Counsel, would you have me inquire any further?

MR. FRANCIS:  No, Your Honor.

THE COURT:  From the defense?

MR. WALKER:  No, Your Honor.

THE COURT:  Let me take one moment.  So, Dr. Zervas, we discussed a lot in the last several minutes. Do you feel you have understood all of the potential consequences of your guilty plea in this case?

THE DEFENDANT:  Yes.

THE COURT:  If you do plead guilty, whose choice would that be?

THE DEFENDANT:  Mine.

THE COURT:  Would you be choosing to plead guilty freely and voluntarily?

THE DEFENDANT:  Yes.

THE COURT:  Do you need any additional time to speak to your lawyer before you sign the plea agreement and enter your plea?

THE DEFENDANT:  No.

THE COURT:  Are you willing to give up your right to a trial on these charges?

THE DEFENDANT:  Yes.

THE COURT:  At this time, if you are prepared to sign the Plea Agreement, you should do so now.  There's signature lines for you in two places on the agreement.

MR. FRANCIS:  May I, Your Honor?

THE COURT:  Yes, please.

MR. FRANCIS:  (Handing.).

THE COURT:  So let the record reflect that both Attorney Francis for the Government and Dr. Zervas and her attorney have signed the plea agreement.

So, Dr. Zervas, it is time now for you to enter your plea.  Do you need any additional time to speak to

your attorney?

THE DEFENDANT:  No.

THE COURT:  You have the right to have the charge read out loud to you before you enter your plea or you can waive a reading of the charge.  Would you like the charge read to you or do you waive the reading?

THE DEFENDANT:  I will waive it.

THE COURT:  I will ask you to stand and have our court clerk here take the plea.

THE CLERK:  In the case of the United States of America versus Helen Zervas, Criminal Case Number 25CR14 assigned to Judge Russell as to Count One of the Information, charging you with violation of Title 18, United States Code Section 1347.  What is your plea?

THE DEFENDANT:  Guilty.

THE COURT:  As to Count Two of the Information, charging you with violation of Title 18 United States Section 1951, what is your plea?

THE DEFENDANT:  Guilty.

THE CLERK:  Your Honor, the defendant has pled guilty to Counts One and Two of the Information.

THE COURT:  Thank you.  So, Dr. Zervas, have you entered that plea of guilty voluntarily, knowingly and of your own free will because you are guilty?

THE DEFENDANT:  Yes.

THE COURT:  Does either counsel know of any reason why I should not accept this guilty plea today?

MR. FRANCIS:  Nothing from the Government, Your Honor.

MR. WALKER:  No, Your Honor.

THE COURT:  On the basis of the answers given by the defendant under oath on the record and in the presence of counsel to the questions of the Court, the remarks of defense counsel and the remarks of the Assistant United States Attorney, I hereby make the following findings: That Dr. Zervas is fully competent and capable of entering an informed plea today.  That she understands the Government's right in a prosecution for perjury or false statement, to use any statement that she gives under oath against her.  She understands her right to plead not guilty and to persist in that plea.  That she understands her rights to a trial by jury including the right to confront and cross-examine adverse witnesses.  To be protected from compelled self-incrimination, to testify and present evidence and to compel the attendance of witnesses.  She understands she would be giving up these rights if she pleaded guilty and the Court accepts the plea.  That she understands the nature of the charges to which she has pleaded guilty including any maximum possible terms of imprisonment and

supervised release and maximum fine, the Court's authority to order restitution and the Court's obligation to impose a special assessment. That she knows the Court is obliged to calculate the applicable sentencing guideline range under the sentencing guidelines and to consider that range, possible departures under the sentencing guidelines and other sentencing factors under 18 U.S.C. Section 3553(a) when determining a sentence and that any factual disputes at sentencing will be resolved by the Court by preponderance of the evidence. That she understands she will not be permitted to withdraw her plea if the calculation of the sentencing guidelines or the sentence ultimately imposed are different than she expected. That she understands her right to appeal her sentence as limited by the plea agreement and that the appellate waiver and her plea was knowing and voluntary. That she understands the potential immigration consequences of a felony conviction if she were not a U.S. citizen or if she's a naturalized U.S. citizen and that she understands the other collateral consequences of a felony conviction. That she understands the terms of her plea agreement and had the opportunity to review those terms with counsel and she accepts the terms of her plea agreement. That she understands the elements of the offenses to which she has pleaded guilty which the

Government is required to prove beyond a reasonable doubt at trial. That there's a factual basis for her plea and that her waiver of rights and plea of guilty have been knowing and voluntarily made of her own free will, were not coerced and were not the product of any other promises besides those contained in the plea agreement.

Accordingly, I hereby accept Dr. Zervas's plea of guilty to Counts One and Two of the Information. This matter shall be referred to the United States Probation Office for a presentence report and investigation.

So within the next few weeks, Dr. Zervas, your attorney will arrange for an interview of you by the United States Probation Office. Your attorney will attend that interview with you. After the interview and other background research, the probation officer will prepare a Presentence Report or PSR we talked about earlier. Please bear in mind that the probation officers work for the Court, not for the Government. The Presentence Report is very important in the calculation of your guidelines and the consideration of your sentence. Once the draft report is published, please read and review it with your attorney. I will ask you at sentencing if you've read it and understood it and given any response you have to it to the probation officer or your attorney. And we have a representative from the

52

probation office here today who I believe will be the one conducting your presentence investigation.

Now, at the time of your sentencing hearing, I will hear from your attorney and the attorney for the Government and I will invite you to speak at your sentencing or write a letter depending on your counsel's advice though it is not required.

So under Local Rule of Criminal Procedure 32(f), I will defer entering a scheduling order. I direct the parties to meet and confer in consultation with the United States Probation Office to arrive at a mutually agreeable deadline for disclosure, memoranda and sentencing. Counsel should submit a proposed sentencing order to me on or before February 21, 2025 and keep in mind that the defense sentencing memorandum must be filed no later than 14 days prior to sentencing and Government's memorandum must be filed no later than 7 days before sentencing. If the defense chooses to file a reply, it shall be filed no later than four days before sentencing.

So I will now take up the issue of release pending sentence. Is there anything further related to the plea that I should take up before I turn to the issue of release?

MR. FRANCIS: Nothing from the Government.

MR. WALKER:  Nothing.

THE COURT:  So with respect to release pending sentence, Attorney Walker, is there an application for release pending sentence pursuant to Title 18, United States Code Section 3143?

MR. WALKER:  Yes, Your Honor.  We request that Dr. Zervas be released on the conditions that probation and the pretrial services have recommended.

THE COURT:  Okay.  Attorney Walker, can I just hear briefly from you why you think the circumstances meet the standards set forth in 18 U.S.C. 3143.  Namely, I must make a finding before ordering release that there's clear and convincing evidence that Dr. Zervas is not likely to flee or pose a danger to the safety of any other person.

MR. WALKER:  Your Honor, Dr. Zervas -- it is not a presumptive case to begin with.  As far as flight risk is concerned, Your Honor, she's been well aware of this investigation in this matter for several years and she has -- not considered that, she has significant ties to the community meaning that she has two of her daughters who are fairly local.  They are in college in Massachusetts.  Her family is quite extensive.  One of six with a mother who is in her 90s.  All of which are local as well as well as her business and her mode of

income.

As far as danger to society, Your Honor, no one more law abiding frankly that's been before a federal court absent what we we're here for today. She has no criminal history and she's not a danger to society in any way whatsoever.

THE COURT: Does the Government wish to be heard regarding release?

MR. FRANCIS: The Government agrees almost entirely with the defense. The one I think quibble we have is given her substantial financial means and the Court's treatment of similarly-situated defendants, the Government would request a $100,000 unsecured, non-surety bond. But otherwise all the other conditions as suggested by probation and pretrial services are fine.

THE COURT: I will state for the record that the probation officer had an opportunity or pretrial services to speak with both the defense and the Government before this proceeding and prepared a Pretrial Services Report that I have reviewed and I understand the parties have reviewed as well.

So I find pursuant to Title 18 United States Code Section 3143 that there's clear and convincing evidence that Dr. Zervas is not likely to flee or pose a danger to the safety of any other person or the community

if released given her extensive ties, her lack of criminal history and the other circumstances that her attorney has presented. Pretrial services is recommending release subject to conditions and I will adopt the recommendations of the Pretrial Services Office with respect to the conditions of release so I will set forth those here.

So we will enter an order so first that the defendant's release will be subject to these conditions: That the defendant must not violate federal, state, or local law while on release. The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. Section 40702. The defendant must advise the court or the Pretrial Services Office or supervising officer in writing before making any a change of residence or phone number and the defendant must sign an appearance bond which I will order.

So, in addition to those standard conditions, I am going to set forth some other conditions; namely, the defendant must submit to supervision by and report to supervision to the Probation and Pretrial Services Office. The defendant must continue to actively seek employment. Defendant must surrender any passport to the Probation and Pretrial Services Office. The defendant must not obtain a passport or other international

document after surrendering the passport.

The defendant with respect to travel shall restrict travel to Massachusetts and Connecticut and any travel outside of those two states must be with prior approval of the Court and that can be done simply by a motion from defense counsel. I understand there may be some work-related travel upcoming so counsel can quickly submit a motion, get the position of the Government and those typically can be resolved on the papers without the need for another appearance. I'm also ordering the defendant may not use or unlawfully process a narcotic drug or other controlled substance defined in 21 U.S.C. 802 unless prescribed by a licensed medical practitioner.

The defendant must report as soon as possible to the Pretrial Services or supervising officer every contact with law enforcement personnel including arrests, questioning or traffic stops and finally, must maintain a residence as approved by Probation and Pretrial Services.

I am going to also ask you to sign a personal recognizance bond. Based on the recommendation of probation and having considered the Government's argument, I do find that a personal recognizance bond is sufficient under these circumstances so that is also something that will be ordered and you will have to sign.

All right. So with that, those are the various

conditions of release.  There will be some paperwork related to those conditions for you to sign in a moment, and I believe that covers what we had to do.

All right.  So does anyone have any questions, concerns related to where we are now?  Is there any further business for us to take up, Attorney Francis?

MR. FRANCIS:  One matter.  It occurs to me because of certain other conflicts, the parties may have an easier time agreeing on a sentencing schedule if we can have a little more time to submit a proposal.  I ask to March 11.  Thirty days from today.

THE COURT:  That would be fine.  March 11. Confer and be sure to loop probation in on that and then send us the proposal.

MR. FRANCIS:  Nothing further.

MR. WALKER:  One item, Your Honor.  Dr. Zervas has had -- it was alluded to in the pretrial services. The only reason I'm bringing it up now verbally is because it's scheduled for Thursday and Friday.  It's been scheduled for Thursday and Friday.  It's a two-day work trip to Texas that she's committed.  I'm wondering if she can provide all the itinerary details to U.S. Probation, get authorization rather than do this by motion before Thursday and rush the order.  It's only a two-day trip.  It was actually brought up in the Pretrial

Services just because that was something that was already scheduled prior to this proceeding.

THE COURT:  If I can have a moment to confer with Pretrial Services on that.

(Discussion Off the Record.)

THE COURT:  So here's what I think we can do because actually we want to confer with the branch of probation who would actually be doing the supervision rather than the presentence report.  I understand the need to resolve it quickly, so I will not require a specific motion on it, but I will endeavor to enter an order as soon as I have an opportunity to consult with Pretrial Services.  Does the Government have a view on this travel?

MR. FRANCIS:  We take no position.

MR. WALKER:  It is a two-day conference Thursday and the return is Sunday so it is slightly longer than two days.  That's the travel days.

THE COURT:  Presumably the tickets have been bought?

MR. WALKER:  Yes.  Her entire staff is going with her so it is the whole office.

THE COURT:  I don't anticipate an issue.  I do want to have an opportunity to consult with the person who will be supervising her and be sure we have the

details squared away.  We'll enter an order by the end of the day.  You don't need to file a motion or anything. With that, anything further from the parties?

MR. FRANCIS:  Nothing, Your Honor.

MR. WALKER:  Nothing.

THE COURT:  We'll stand adjourned.

(Adjourned: 1:16 p.m.)

COURT REPORTER'S TRANSCRIPT CERTIFICATE

I hereby certify that the within and foregoing is a true and correct transcript taken from the proceedings in the above-entitled matter.

/s/  Terri Fidanza

Terri Fidanza, RPR

Official Court Reporter